IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Ricky Eugene Brown,　　　　　　　　 ) | Civil Action No. 6:11-1500-MBS-KFM |
| 　　　　　　　　　　　　　　　　 ) | |
| 　　　　　　　　Plaintiff, 　　　　 ) | |
| 　　　　　　　　　　　　　　　　 ) | **REPORT OF MAGISTRATE JUDGE** |
| 　　　　vs. 　　　　　　　　　　 ) | |
| 　　　　　　　　　　　　　　　　 ) | |
| Michael J. Astrue, 　　　　　　　 ) | |
| Commissioner of Social Security, 　 ) | |
| 　　　　　　　　　　　　　　　　 ) | |
| 　　　　　　　　Defendant. 　　　 ) | |
| _____ ) | |

This case is before the court for a report and recommendation pursuant to
Local Civil Rule 73.02(B)(2)(a) DSC, concerning the disposition of Social Security cases
in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Section 205(g) of the Social
Security Act, as amended (42 U.S.C. 405(g)), to obtain judicial review of a final decision
of the Commissioner of Social Security denying his claim for disability insurance benefits
under Title II of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff filed an application for disability insurance benefits ("DIB") on
August 13, 2008, alleging that he became unable to work on July 19, 2006. The
application was denied initially and on reconsideration by the Social Security

---

[1]A report and recommendation is being filed in this case in which one or both parties declined to consent
to disposition by the magistrate.

Administration. On December 17, 2009, the plaintiff requested a hearing. The administrative law judge ("ALJ"), before whom the plaintiff and Kathleen H. Robbins, an impartial vocational expert, appeared, considered the case *de novo*, and on September 30, 2010, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The ALJ's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on May 10, 2011. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2011.
>
> 2. The claimant has not engaged in substantial gainful activity since July 19, 2006, the alleged onset date (20 C.F.R. § 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: degenerative disc disease of the lumbar and cervical spine, degenerative joint disease of the hips, depression, and anxiety (20 C.F.R. § 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a). Specifically, the claimant can stand and walk 2 hours, each, of an 8 hour workday. The claimant can sit for 6 hours of an 8 hour workday. The claimant can lift/carry 10 pounds occasionally and 10 pounds frequently. The claimant can frequently climb. The claimant can occasionally climb ladders, scaffolds, ropes, balance, stoop, kneel, crouch and crawl. The claimant can occasionally perform overhead reaching with his

left upper extremity.  The claimant can frequently finger and handle with his left upper extremity.  The claimant must avoid moderate exposure to hazards.  The claimant can do sustained work at simple 1-2 step functions, but would require low stress work environment; defining low stress would be occasional contact with the public.

6.  The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565).

7.  The claimant was born on February 10, 1964, and was 42 years old, which is defined as a younger individual age 18-49, on the alleged onset date (20 C.F.R. § 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R.  Part 404. Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, and 404.1569(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from July 19, 2006, through the date of this decision (20 C.F.R. § 404.1520(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and

who are under a "disability."  42 U.S.C. § 423(a).  "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions.  An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2)  has a severe impairment, (3)  has an impairment that equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4)  has an impairment that prevents past relevant work, and (5)  has an impairment that prevents him from doing substantial gainful employment.   20 C.F.R. § 404.1520.   If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* § 404.1520(a)(4).

The plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62, 1982 WL 31386, at *3.  The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).  He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform, despite the existence of impairments which prevent the return to past relevant work, by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that his conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## EVIDENCE PRESENTED

On July 24, 2006, the plaintiff complained to Sidarth Patel, M.D., of lower back and left leg pain and numbness of the left foot, left shoulder pain, and numbness in the fingers of his left hand. Dr. Patel found the plaintiff had a slow, antalgic gait and mild tenderness in the lumbar region. He diagnosed sciatica and suspected cervical radiculopathy or shoulder disease with regard to the plaintiff's shoulder and hand symptoms (Tr. 323).

The plaintiff presented at the Anderson Area Medical Center on August 1, 2006, with a chief complaint of right hip pain. He reported that he was injured on July 19, 2006, while using a heavy drill and had since been unable to work (Tr. 248). Lewis M. Jones, M.D., noted that an MRI of the plaintiff's spine showed "chronic degenerative changes with disc present" but no large disc extrusion. Dr. Jones diagnosed "work-related back, hip pain with disk disease" (Tr. 249-51). X-rays of the plaintiff's left shoulder were reported as negative (Tr. 254).

Michael T. Grier, M.D., a pain management specialist, examined the plaintiff on October 6, 2006. Dr. Grier noted that, compared to a 2001 MRI of the lumbar spine,

the plaintiff's August 2006 MRI showed a slight increase in spondylosis, facet arthritis, and disc bulging. Dr. Grier found that the plaintiff had a "fairly typical" radicular pain pattern and prescribed epidural steroid injections (Tr. 289-90).

On February 27, 2007, Dr. Grier noted the plaintiff had cancelled his epidural steroid injection appointment and had no specific treatment since October 2006. Dr. Grier found the plaintiff had an essentially normal gait with only a minimally antalgic component, normal mental status, and intact memory. After the plaintiff again declined epidural steroid injections, Dr. Grier prescribed pain medication (Gabapentin). In March 2007, the plaintiff reported little relief from Gabapentin and complained of side effects. Dr. Grier changed his medication and again found his gait was essentially normal. In April 2007, Dr. Greer found the plaintiff's gait was "modestly antalgic" and that he had good strength, no motor or sensory deficits, and normal mental status. Dr. Grier adjusted his medication regimen because of the plaintiff's report of side effects (Tr. 285-88).

In May 2007, the plaintiff complained of increased pain in his back and legs when standing for longer than ten minutes. Dr. Grier found he had a markedly antalgic gait and some giveaway weakness in the right leg. Dr. Grier refused the plaintiff's request for narcotic medication and prescribed Relafen and Baclofen (Tr. 283-84). In July 2007, Dr. Grier found the plaintiff had a modestly antalgic gait with good strength and no particular limp, intact memory, and no major signs of a mental disorder (Tr. 281).

On June 13, 2007, Dr. Patel examined the plaintiff and reviewed his MRI report. The plaintiff reported no improvement with pain treatment and complained of pain

after 15-20 minutes of standing. Dr. Patel's examination revealed a mild, right-sided limp and minimal tenderness in the lumbar region. Dr. Patel diagnosed low back pain/sciatica and stated: "In my opinion he can do sedentary sit down job if available" (Tr. 299).

In July 2007, Marion R. McMillan, M.D., of Foothills Pain and Anesthesia Associates, examined the plaintiff and found he had an antalgic gait, a positive straight leg raising test on the right, absent ankle reflexes, and abnormal sensation in the right calf. Dr. McMillan diagnosed a far-right lateral disc herniation at L4-5 with right lumbar neuralgia and recommended microdiscectomy surgery (Tr. 244-45).

On August 3, 2007, Dr. Grier noted that he had been recommending epidural steroid injections to the plaintiff "all along" but the plaintiff continued to refuse them and that the plaintiff had tried various medications without dramatic relief of pain. He also noted that the plaintiff was scheduled to see Dr. Worsham as a primary care provider. Dr. Grier prescribed Percocet for the plaintiff at the plaintiff's request, but noted he would not provide that medication on a long-term basis. Dr. Grier further noted that the plaintiff asked if he was a candidate for a percutaneous disc decompression. Dr. Grier told him that he would ask Dr. Loudermilk, but the plaintiff would need to fail a trial of epidural steoids first (Tr. 280).

The plaintiff saw Stephen F. Worsham, M.D., as a new patient on August 14, 2007. The plaintiff related that nothing had helped him but narcotic pain medication, "hinting at Oxycontin, Percocet, Lortab." Dr. Worsham ordered x-rays and prescribed Klonopin, Ultram, and Neurontin (Tr. 297). Two weeks later, the plaintiff reported that he

had strained his shoulder, hip, and back while crawling under a truck and working on the engine. Dr. Worsham adjusted his medications and noted that Klonopin had worked well for the plaintiff's "anxiety disorder" (Tr. 296).

The plaintiff underwent epidural steroid injections on August 22 and September 12, 2007 (Tr. 276-79). On October 10, 2007, the plaintiff reported that his hips and thighs felt much better but complained of pain and numbness in his lower legs. Dr. Grier's examination revealed a modest antalgic gait with no particular limp, good strength, and no major signs of a mental disorder. Dr. Grier prescribed Robaxin for muscle spasm in the great toe and refilled his prescription for Percocet (Tr. 274).

On October 23, 2007, Dr. Worsham noted that pain management had helped the plaintiff "tremendously" and that he was currently doing well. On January 7, 2008, Dr. Worsham noted that he was treating the plaintiff for "anxiety disorder, depression, and hyperlipidemia." He noted that the plaintiff had "a lot of tearful periods" and prescribed Valium and Celexa (Tr. 294-95).

In November and December 2007 and February 2008, Dr. Grier noted that the plaintiff had no side effects from his medications and was stable on his current regimen (Tr. 268, 272-73).

On April 1, 2008, Dr. Grier found that the plaintiff had a modest antalgic gait with no particular limp, good strength, and normal mental status. The plaintiff complained of increasing neck pain with radicular symptoms in the left arm and hand. Dr. Grier ordered an MRI of the cervical spine, which showed no evidence of disc herniation (Tr. 266, 269).

On April 23, 2008, Dr. Worsham saw the plaintiff "after prolonged absence" and refilled his prescriptions for Valium (for anxiety) and Ambien (for insomnia) (Tr. 293).

On May 30, 2008, Dr. Grier found the plaintiff had normal gait and good strength in all extremities except for some weakness in the left upper extremity and normal mental status. On July 29, 2008, Dr. Grier found the plaintiff had a modestly antalgic gait with no limp and was otherwise neurologically intact (Tr. 264, 265). On September 23, 2008, Dr. Worsham treated the plaintiff for an upper respiratory infection and increased his dosage of Valium based on the plaintiff's reports of increased anxiety (Tr. 292).

On September 26, 2008, Dr. Grier noted that the plaintiff's medications included Robaxin and Oxycodone, and that the plaintiff reported no side effects. He also noted that the plaintiff's MRI showed multilevel disc bulging but no obvious nerve root impingement (Tr. 263). Dr. Grier ordered nerve conduction studies, the results of which were reported as normal (Tr. 260-63).

Dale Van Slooten, M.D., a state agency medical consultant, reviewed the plaintiff's records in December 2008 and concluded that he could lift ten pounds occasionally and frequently, sit for six hours and stand/walk for two hours in an eight-hour workday, had limited ability to use foot controls, and could occasionally balance, stoop, kneel, crouch, and crawl (Tr. 300-07). State agency medical consultant William B. Hopkins, M.D., reported essentially the same findings in September 2009 (Tr. 337-44).

In January 2009, Robbie Ronin, a state agency psychological consultant, reviewed the plaintiff's records and found he did not have a "severe"[2] mental impairment (Tr. 308-21).

In December 2008 and April 2009, Dr. Worsham refilled the plaintiff's medications for anxiety (Tr. 330-31). In January and March 2009, Dr. Grier noted that the plaintiff was stable on his medications but still had significant pain (Tr. 326-27). In May 2009, Dr. Grier indicated he would prescribe a different medication, such as methadone, if Oxycodone was inadequate to relieve the plaintiff's pain (Tr. 325).

Xanthia Harkness, Ph.D., a state agency psychological consultant, reviewed the plaintiff's records in September 2009 and found he had depressive and anxiety-related disorders that resulted in mild limitations in activities of daily living, moderate limitations in social functioning and concentration/persistence/pace, and no episodes of decompensation (Tr. 345-55). In a mental residual functional capacity assessment, Dr. Harkness indicated that the plaintiff had no significant limitations in most areas of work-related mental functioning and moderate limitations in the following areas: understanding, remembering, and carrying out detailed instructions; maintaining concentration and attention for extended periods; and interacting appropriately with the general public. Dr. Harkness concluded that the plaintiff was able to perform simple, repetitive work that did not involve on-going interaction with the general public (Tr. 359-61).

---

[2] An impairment or combination of impairments is "severe" if it significantly limits a claimant's ability to do basic work activities. *See* 20 C.F.R. § 404.1521.

On September 4, 2009, the plaintiff reported he was walking more, which sometimes exacerbated his pain. Dr. Grier noted that the plaintiff was relatively stable on his medications and that while his pain was not completely relieved, his medications were quite helpful (Tr. 369). In December 2009, the plaintiff complained of increased pain after he had "a lot of physical activity associated with work around the house and some malfunction of his vehicle" (Tr. 368). In January, March, and July 2010, Dr. Grier noted that the plaintiff was relatively stable and continued his medications (Tr. 364).

Brian A. Keith, Ph.D., a psychologist, examined the plaintiff at the request of the Commissioner on September 8, 2009. The plaintiff reported that his daily activities included feeding his dog, getting his mail at the post office, watching television, preparing some meals, doing laundry, paying bills, and washing clothes. He stated that he was unable to meet his hygiene needs without assistance. Dr. Keith diagnosed depression vs. pain disorder with depression. He found the plaintiff had average cognitive skills and intact social functioning, but that his pain medication could cause concentration difficulties (Tr. 332-36).

C. David Tollison, Ph.D., evaluated the plaintiff on August 9, 2010. Dr. Tollison diagnosed major depressive disorder, lower back and lower extremity pain, and a GAF code of 50.[3] He concluded that the plaintiff would have difficulty maintaining

---

[3] A Global Assessment of Functioning (GAF) score of 41 to 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional/rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *See* American Psychiatric Association, *Diagnostic and Statistical Manual - Text Revision* (2000), available on Stat! Ref Library Cd-ROM (4th Qtr.2006).

attention and concentration, would require frequent unscheduled rest periods, and would not be able to meet typical production or attendance standards due to increased pain with physical activity (Tr. 374-78).

Randy L. Adams, M.Ed., a vocational evaluator, examined the plaintiff on August 17, 2010 (Tr. 184-93). Mr. Adams concluded that the plaintiff was limited to sedentary work with limitations on use of his left upper extremity, but could not perform clerical or sales work because of his marginal education. He stated that the plaintiff's limitations in handling, fingering, and reaching would seriously erode the occupational base of sedentary work (Tr. 191-92). Mr. Adams stated that the plaintiff's chronic pain and symptoms of depression and anxiety, along with his physical limitations, would preclude him from performing any substantial gainful activity (Tr. 192-93).

At the hearing on August 23, 2010, the plaintiff testified that he received a G.E.D. in 1989 and had an Associate's Degree in industrial mechanics. He testified that his job as a millwright involved installing heavy industrial machinery and lifting up to 80 pounds (Tr. 35-37). He testified that he experienced pain in his back, right hip, and right leg, severe muscle spasms in his right leg, and difficulty reaching with his left arm. He said that he could no longer play the guitar and that he tended to drop things a lot due to arthritis in his fingers (Tr. 40-41). He said that he was bedridden for nine months following his accident and that he had a lot of depression (Tr. 43). He testified that he did not follow Dr. McMillon's recommendation for surgery because Dr. Grier advised against it. The plaintiff testified that he could sit for about 20 minutes, stand for about 10-15 minutes, and

walk for about 5-10 minutes. He testified that he lay down about 20 minutes out of each hour for pain relief. He testified that he had difficulty balancing and sometimes used a cane. He indicated that his daily activities included feeding his dog, driving short distances, visiting his mother, watching television, reading, and washing clothes (Tr. 44-54). He testified that he experienced no side effects from medication but that he had "a little" trouble concentrating (Tr. 55).

Kathleen Robbins, Ph.D., a vocational expert, classified the plaintiff's past work as a millwright as heavy, skilled work and his past work as an industrial mechanic and building maintenance supervisor as medium, skilled work (Tr. 63). The ALJ asked Dr. Robbins to consider an individual the same age as the plaintiff with the same education and work experience with the following limitations:

- lifting up to 10 pounds occasionally and 10 pounds frequently;
- standing for up to two hours, walking for up to two hours, and sitting for up to six hours in an eight-hour day;
- no more than occasional climbing of ladders, balancing, kneeling, crouching, and crawling;
- no more than frequent handling and fingering with the left arm;
- no more than occasional overhead reaching with the left arm;
- avoidance of even moderate exposure to hazards; and
- restricted to performing simple, one-two step functions;

> • a low stress work environment, which would include no more
> than occasional contact with the public.

(Tr. 63-64).  Dr. Robbins testified that such a person could not perform any of the plaintiff's

past jobs but could work as an office helper and surveillance system monitor (Tr. 64-65).

After the ALJ issued his decision, the plaintiff submitted the following

additional evidence from Dr. Tollison to the Appeals Council: a Psychiatric Review

Technique form, dated January 17, 2011, in which Dr. Tollison indicated that the plaintiff

met the listings for affective and somatoform disorders (Tr. 216-29), and a medical source

statement, in which he indicated that the plaintiff could "rarely" deal with the public, function

independently, maintain attention/concentration, demonstrate reliability, and relate

predicably in social situations, and "never" deal with work-related stress (Tr. 231-32).  Dr.

Tollison also indicated that the plaintiff had those limitations since July 19, 2006 (Tr. 234).

The plaintiff also submitted a questionnaire completed by Dr. Worsham on

February 24, 2011, in which Dr. Worsham indicated that the plaintiff was unable to work

due to chronic pain (Tr. 240-41).

## ANALYSIS

The plaintiff was 42 years old on his alleged disability onset date of July 19,

2006.  He has an Associate's Degree in industrial mechanics and last worked in July 2006

as a millwright, installing heavy machinery.  The ALJ found that he had the following severe

impairments:  degenerative disc disease of the cervical and lumbar spine, degenerative

joint disease of the hips, depression, and anxiety. He further determined that the plaintiff

had the residual functional capacity ("RFC") to perform a limited range of sedentary work. The ALJ determined the plaintiff could not perform his past relevant work but could perform work as an office helper and surveillance system monitor and was, therefore, not disabled. The plaintiff argues that the ALJ erred by (1) not giving proper consideration to his testimony regarding the severity of his symptoms; (2) rejecting the opinion of Mr. Adams, a vocational evaluator, that the he is not capable of performing sedentary unskilled work; (3) failing to grant adequate weight to the expert opinion of Dr. Tollison; and (4) not giving proper consideration to the testimony of the vocational expert that there are no jobs available in the local or national economy that he can perform due to the severity of his combination of physical and mental impairments. The plaintiff also argues that reversal of the Commissioner's decision is warranted because new and material evidence was submitted to the Appeals Council showing that he is disabled.

***Credibility***

The Fourth Circuit Court of Appeals has stated as follows with regard to the analysis of a claimant's subjective complaints:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . .
> It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 593, 595 (4th Cir. 1996). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." 1996 WL 374186, at *4. Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." *Id.*

The factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

  (1) the individual's daily activities;

  (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms;

  (3) factors that precipitate and aggravate the symptoms;

  (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

  (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

      (6)     any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

      (7)     any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *3.

      The ALJ found that the plaintiff's subjective complaints were not fully credible. He determined that the plaintiff's impairments could reasonably be expected to produce his alleged symptoms and then considered the entire record before finding that the plaintiff's statements regarding the severity of his symptoms and limitations were not fully credible (Tr. 24). In doing so, the ALJ considered the plaintiff's alleged limitations and his own statements concerning the severity of his condition, the evidence regarding his daily activities, the objective medical evidence, the statements of physicians, and the nature and effectiveness of his treatment (Tr. 24-27). Specifically, the ALJ noted that the plaintiff made inconsistent statements regarding his ability to care for his personal hygiene and that certain activities documented in his medical records—crawling under a truck to work on the engine on one occasion (Tr. 296) and "a lot of physical activity associated with work around the house" on another (Tr. 368)—were inconsistent with his allegations of extreme pain (Tr. 24-25). Inconsistencies between a claimant's alleged symptoms and the evidence of record may support a finding that the claimant is not fully credible. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994).

Further, the ALJ considered that the plaintiff's alleged limitations were inconsistent with his daily activities, which included driving, doing laundry and some shopping, preparing simple meals, driving to the post office, playing guitar at Christian gatherings, attending church three times per week, and visiting family members (Tr. 24). Regardless of the plaintiff's attempts to minimize the significance of these activities, the ALJ's conclusion that these activities were inconsistent with an alleged inability to perform sedentary work was not unreasonable. *See, e.g., Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (affirming ALJ's reasoning that claimant's ability to attend church, read, watch television, clean the house, wash clothes, visit relatives, feed pets, cook, manage finances, perform stretches, and lift ten pounds were inconsistent with allegations of extreme limitation).

In addition to inconsistencies in the evidence and the plaintiff's daily activities, in assessing the plaintiff's credibility the ALJ also considered that Dr. Grier treated the plaintiff conservatively for his symptoms (Tr. 25). As Dr. Grier's records reflect, the plaintiff refused Dr. Grier's recommendations of epidural steroid injections for more than a year after the occurrence of his injury (Tr. 280). The nature and extent of a claimant's treatment are relevant factors in assessing the severity of the claimant's symptoms. *See* 20 C.F.R. § 404.1529(c)(3).

The ALJ further found that there was a lack of objective medical evidence supporting the plaintiff's complaints (Tr. 25-26). The plaintiff argues that the ALJ erred in so finding. This court disagrees.

In *Hines v. Barnhart*, 453 F.3d 559 (4th Cir. 2006), a Fourth Circuit Court of Appeals panel held, "Having met his threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [the claimant] was entitled to rely exclusively on subjective evidence to prove the second part of the test, i.e., that his pain [was] so continuous and/or severe that it prevent[ed] him from working a full eight-hour day." 453 F.3d at 565.  However, the court in *Hines* also acknowledged that "'[o]bjective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available should be obtained and considered.'" *Id.* at 564 (quoting SSR 90-1p).

> The court further acknowledged:
>
> While objective evidence is not mandatory at the second step of the test, "[t]his is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers."

*Id*. at 565 n.3 (quoting *Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996)). *See Johnson*, 434 F.3d at 658; 20 C.F.R. § 404.1529(c)(2) ("We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as

to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."); SSR 96-7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence.").

Here, the absence of objective medical evidence supporting the plaintiff's statements about his limitations was only one factor considered by the ALJ in assessing the plaintiff's credibility. He noted, for example, that an MRI of the plaintiff's cervical spine showed no disc herniations or protrusions; that x-rays of his hips showed no joint compromise; that his nerve conduction studies were normal; that Dr. Grier assessed his limp as "slight"; that examinations revealed no neurological deficits in his upper extremities; and that the MRI of his lumbar spine showed no nerve root compression (Tr. 25-26).

By arguing that the ALJ "manipulated" and mischaracterized the evidence to support his credibility finding, the plaintiff attempts to minimize the evidence unfavorable to his claim and to highlight evidence that might support a finding of disability. Whether the evidence could support a result inconsistent with the ALJ's decision is irrelevant. This case presents "the not uncommon situation of conflicting medical evidence." *Richardson v. Perales*, 402 U.S. 389, 399 (1971). Under the substantial evidence standard of review, the

question is whether the evidence supported the ALJ's actual finding, regardless of whether the evidence might have also supported a different finding. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The record in this case is sufficient to support the ALJ's finding that the plaintiff was not completely credible. Accordingly, this allegation of error is without merit.

### *Vocational Evaluator*

The plaintiff next argues that the ALJ erred in rejecting the opinion of Randy L. Adams, M.Ed., a vocational evaluator. Mr. Adams examined the plaintiff on August 17, 2010. Mr. Adams concluded that the plaintiff was limited to sedentary work with limitations on use of his left upper extremity, but could not perform clerical or sales work because of his marginal education. He stated that the plaintiff's limitations in handling, fingering, and reaching would seriously erode the occupational base of sedentary work and stated that the plaintiff's chronic pain and symptoms of depression and anxiety, along with his physical limitations, would preclude him from performing any substantial gainful activity (Tr. 184-93).

The ALJ found as follows with regard to Mr. Adams' opinion:

> I give it no weight. Mr. Adams opined that the claimant was not capable of performing sedentary unskilled work. He further opined that the claimant was not capable of obtaining or maintaining any substantial gainful activity due to the combination of exertional and non-exertional impairments. I find that Mr. Adams based his opinion on what he determined the residual functional capacity to be. Also, Mr. Adams is not a treating source. Likewise, his opinion is inconsistent with the claimant being capable of working on a truck and working around the house. Furthermore, his opinion is inconsistent

with Dr. Grier's notes that [the plaintiff's] concentration was
good.

(Tr. 26).

The Commissioner argues that it is the responsibility of the ALJ to assess the plaintiff's RFC, and thus the ALJ's rejection of Mr. Adams' opinion as to the plaintiff's RFC was proper (def. brief at 16-17). However, the ALJ also ignored the findings revealed by objective vocational testing of the plaintiff in Mr. Adams' assessment. Specifically, finger dexterity testing (using the Purdue Pegboard test) revealed the plaintiff has "very low" hand and finger dexterity in both hands and is not a candidate for any type of job that would require him to use his hands and fingers on a repetitive basis and manipulating small parts (Tr. 188). Other medical evidence supports this finding: Dr. Patel's examination notes show that the plaintiff complained of numbness in the fingers of his left hand in March 2006 (Tr. 323), and Dr. Grier's examination notes in April 2008 reveal that the plaintiff has "some difficulty with fine motor function in his left hand along with numbness particularly at night (Tr. 266). However, the ALJ specifically found in his RFC assessment that the plaintiff "can frequently finger and handle with his left upper extremity," and no restriction was given to the right upper extremity (Tr. 22). The ALJ provided no explanation for his rejection of these findings.

Based upon the foregoing, this court finds that the ALJ improperly considered Mr. Adams' opinion. Accordingly, upon remand, this court recommends that the ALJ be

instructed to evaluate and consider the objective evidence from Mr. Adams' assessment of the plaintiff's ability to perform fine manipulation with his hands and fingers.

***Opinion Evidence and Appeals Council Evidence***

The plaintiff next argues that the ALJ failed to give adequate weight to the opinion of examining psychologist Dr. Tollison.  The regulations require that all medical opinions in a case be considered, 20 C.F.R. § 416.927(b), and, unless a treating source's opinion is given controlling weight, weighed according to the following non-exclusive list: (1) the length of the treatment relationship and the frequency of the examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 416.927(d)(2)-(5). *See also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005).  However, statements that a patient is "disabled," "unable to work," meets the listing requirements, or similar assertions are not medical opinions.  These are administrative findings reserved for the Commissioner's determination. SSR 96-5p, 1996 WL 374183, at *5.

Dr. Tollison examined the plaintiff on August 9, 2010 (Tr. 374-88).  He administered the MMPI test, which determined that there is no indication of denial or symptom promotion (Tr. 376).  Dr. Tollison also administered the Pain Patient Profile (P-3) test, which indicated an intensity of depression in the top 20th percentile, anxiety in the top 30th percentile, and somatization in the top 34th percentile (Tr. 377).  Dr. Tollison diagnosed the plaintiff with "Major Depressive Disorder, superimposed on a chronic

dysthymic disorder" and with "Somatoform Disorder (pain disorder associated with both psychological factors and a general medical condition)" (Tr. 377). He also found the plaintiff had a GAF of 50, indicating serious difficulty in occupational functioning. Dr. Tollison opined as follows:

> Mr. Brown is expected to have difficulty maintaining concentration and attention over time, being distracted by his co-morbid symptoms of chronic pain and clinical depression. In addition, he is expected to require frequent and unscheduled rest periods. Given that pain intensity is increased with physical activity, it is unlikely he could meet typical production standards or regular work attendance. Work pressures, stresses, and demand situations are expected to result in deterioration both in physical and psychological functioning.

(Tr. 378).

The ALJ gave Dr. Tollison's opinion "little weight," noting that it was a one-time evaluation and that the findings were "inconsistent with other providers who report no signs of depression or anxiety" (Tr. 26). Specifically, the ALJ cited Dr. Grier's treatment notes; however, as noted by the plaintiff, Dr. Grier is a specialist in pain management and not a trained psychologist. Also, the ALJ stated that Dr. Tollison's opinion was inconsistent with Dr. Keith's earlier psychological examination (Tr. 26). However, the ALJ did not provide any examples of such inconsistency. As argued by the plaintiff, Dr. Tollison's opinion is quite consistent with Dr. Keith's examination of the plaintiff. Dr. Keith, a psychologist, examined the plaintiff at the request of the Commissioner on September 8, 2009. Dr. Keith diagnosed depression vs. pain disorder with depression. He found the

plaintiff had average cognitive skills and intact social functioning, but that his pain medication could cause concentration difficulties (Tr. 332-36). The ALJ also found that Dr. Tollison's opinion was inconsistent Dr. Worsham's report that the plaintiff's "condition was stable and that he was doing well" and noted that Dr. Worsham was the only doctor treating the plaintiff for his anxiety and depression (Tr. 26). As will be discussed below, the plaintiff submitted to the Appeals Council new evidence from Dr. Worsham in which he opined that the plaintiff's chronic pain would distract him in job settings and impair his ability to perform work (Tr. 240). Lastly, the ALJ found it significant that the plaintiff had not sought mental healthcare (Tr. 26). However, the plaintiff argues in response that he cannot afford mental healthcare and that his lack of funds to seek such treatment should not be used against him (pl. brief at 24 (citing *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986)).

      The plaintiff also argues that remand is appropriate based upon new and material evidence submitted to the Appeals Council. After the ALJ issued his decision, the plaintiff submitted the following additional evidence from Dr. Tollison to the Appeals Council: a Psychiatric Review Technique form, dated January 17, 2011, in which Dr. Tollison indicated that the plaintiff met the listings for affective and somatoform disorders (Tr. 216-29); and a medical source statement, in which he indicated that the plaintiff could "rarely" deal with the public, function independently, maintain attention/concentration, demonstrate reliability, and relate predicably in social situations, and "never" deal with

work-related stress (Tr. 231-32). Dr. Tollison also indicated that the plaintiff had those limitations since July 19, 2006 (Tr. 234).

The plaintiff also submitted a questionnaire completed by treating physician Dr. Worsham on February 24, 2011, in which Dr. Worsham indicated that the plaintiff was unable to work due to chronic pain (Tr. 240-41). He further stated that the work limitations were supported by his diagnoses and findings of: multilevel degenerative disc disease, cervical and lumbar, chronic pain with movement, pain and stiffness when sedentary, generalized anxiety disorder with severe depression, and hyperlipidemia (Tr. 241).

The Appeals Council denied the request for review stating, "We found no reason under our rules to review the Administrative Law Judge's decision" (Tr. 1). In *Meyer v. Astrue*, 662 F.3d 700 (4th Cir. 2011), the Fourth Circuit held that the Appeals Council is not required to articulate its rationale for denying a request for review. *Id*. at 706. However, the court noted:

> In view of the weight afforded the opinion of a treating physician, *see* 20 C.F.R. § 404.1527(d)(2), analysis from the Appeals Council or remand to the ALJ for such analysis would be particularly helpful when the new evidence constitutes the only record evidence as to the opinion of the treating physician. *Cf. id.* ("[ALJs] will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); *id*. § 404.977 (providing "[t]he Appeals Council may remand a case to an [ALJ] ... [when] additional evidence is needed or additional action by the administrative law judge is required").

*Id.* The Fourth Circuit then stated that when the Appeals Council receives additional evidence and denies review, the issue for the court is whether the ALJ's decision is

supported by substantial evidence. *Id*. at 707.  Further, the court held that when the evidence is one-sided, the court may be able to determine whether substantial evidence supports the ALJ's decision. *Id*.  However, where the "other record evidence credited by the ALJ conflicts with the new evidence," there is a need to remand the matter to the fact finder "to reconcile that [new] evidence with the conflicting and supporting evidence in the record." *Id.*  Remand is necessary because "[a]ssessing the probative value of competing evidence is quintessentially the role of the fact finder." *Id*.

Here, the new evidence of Dr. Worsham's opinion is the only record evidence as to his opinion as the plaintiff's treating physician.  Furthermore, the ALJ used Dr. Worsham's medical reports to discount Dr. Tollison's opinion as discussed above. However, the new evidence of Dr. Worsham's opinion corroborates the opinion of Dr. Tollison, which was rejected by the ALJ.  This court finds that the situation is very similar to that in *Meyer* where the court stated:

> On consideration of the record as a whole, we simply cannot determine whether substantial evidence supports the ALJ's denial of benefits here.  The ALJ emphasized that the record before it lacked "restrictions placed on the claimant by a treating physician," suggesting that this evidentiary gap played a role in its decision.  Meyer subsequently obtained this missing evidence from his treating physician.  That evidence corroborates the opinion of Dr. Weissglass, which the ALJ had rejected.  But other record evidence credited by the ALJ conflicts with the new evidence.  The Appeals Council made the new evidence part of the record but summarily denied review of the ALJ decision.  Thus, no fact finder has made any findings as to the treating physician's opinion or attempted to reconcile that evidence with the conflicting and supporting evidence in the record.  Assessing the probative value of

> competing evidence is quintessentially the role of the fact
> finder. We cannot undertake it in the first instance. Therefore,
> we must remand the case for further fact finding.

*Id.* at 707.

Accordingly, this court recommends that, upon remand, the ALJ should be instructed to consider the record as a whole, including the new evidence, and to address the weight given to the opinion of treating physician Dr. Worsham and to reevaluate the prior finding regarding the weight given the opinion of Dr. Tollison in light of the newly produced evidence.

### *Vocational Expert*

The plaintiff further argues that the ALJ failed to consider vocational expert testimony that established he was unable to perform any jobs. "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, . . . , and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (citations omitted).

When the ALJ presented a hypothetical question to the vocational expert that incorporated the ALJ's RFC finding, the expert responded that a person with those limitations could perform the jobs of office helper and surveillance system monitor (Tr. 63-65). The second hypothetical question the ALJ posed to the vocational expert contained additional limitations that the ALJ did not include in his RFC finding:

Hypothetical number two [is] the same as hypothetical number one. The only modification is just that this individual will miss various times from work, the frequency and duration of which would be in the sole discretion of this hypothetical individual. For example, this individual may need to sit down and rest, or lay down and rest, or be away from the work station for some reason like that, but it would occur on a frequent basis.

(Tr. 65). The vocational expert responded that such a person would be unable to perform any jobs (Tr. 65).

The plaintiff argues that the first hypothetical failed to take into account his chronic pain and postural and manual dexterity limitations. The plaintiff further argues that since the second hypothetical question most accurately reflects the plaintiff's exertional and nonexertional impairments, the ALJ erred in not giving proper consideration to that testimony, which was not mentioned in the ALJ's decision.

As discussed above, this court finds that upon remand the ALJ will need to evaluate and weigh the newly produced evidence from Drs. Worsham and Tollison and to reevaluate and weigh the prior opinions of vocational evaluator Mr. Adams and Dr. Tollison. Should the ALJ's analysis upon remand continue to Step Five of the sequential evaluation, he should be instructed to obtain additional vocational expert testimony and to provide the expert with proper hypothetical questions fairly setting out all of the plaintiff's impairments.

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, this court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. § 405(g), with a remand of the cause to the Commissioner for further proceedings as discussed above.

IT IS SO RECOMMENDED.


June 29, 2012                                    s/ Kevin F. McDonald
Greenville, South Carolina              United States Magistrate Judge